On Application por a Rehearing.
Breaux, J.
Only one issue remains for further consideration.
The rehearing at this time confined the question to the bounty money.
*1113 The end of the bounty was to encourage the production of cane.
It devolved upon us to determine by whom the cane was produced.
In our judgment, after carefully reading the act, it is evident that the producer was to be the first to receive the benefit of the bounty.
It devolved upon him, in order to recover the bounty, to comply with certain formalities.
The act (although it includes the manufacture of cane into sugar as one of the essentials) places the manufacture of the sugar in matter of the bounty scheme in a secondary position.
In other words, in our view, production was a first, and manufacture a secondary, consideration.
Bach, however, was essential in order to enable the producer to recover the bounty.
In order to determine who was the producer we have had to consider questions of title and of ownership.
To the date of the testator’s death on September 19, 1894, the plantation had been his property; the crop had been planted and cultivated by him, and all expenses to that date were paid from his funds. The value of the crop, at that date, he had earned: he had also earned a proportionate share of the bounty, not because the bounty was part of the crop, not because it Was part of the proceeds, but because the bounty was granted to the producer of the crop.
In determining who was the producer it was not possible to exclude from all consideration the labor applied under the direction of the owner, and the amount expended by him.
The legatee here claiming assisted after the date just stated in producing the crop, but she was not the exclusive producer from the first, and she, therefore, is not entitled to the whole bounty of the government granted to the producers who produced an entire thing, a crop.
After having decided that to the date already mentioned the testator was the producer, we applied ourselves to ascertain by whom this producer was succeeded as a producer; whether it was Mrs. Bettie Allen as legatee or the legal heirs.
We must meet the fact, for it is plainly written in the will of the testator that she was thelegatee of one-half of the plantation. There was, it is true, qualification or limitation in matter of the right to one-half. '
*1114 It remains that she was the owner of one-half of the place. If we were to stop here this would limit the interest of Mrs. Allen, as a producer, to one-fourth of the crop; that is, if we should consider that the ownership of one-half of the plantation was of itself enough to prove that she was the producer. We do not think it was.
But there are other clauses of the will which, in our view, extend her right and show that she was the producer after the death of Mr. Allen. She paid all the expenses of the crop; she was to receive the proceeds under the terms of the will; indeed she was the owner of the crop. She can well be considered, as we think, the producer after the death of her husband.
We desire it to be well understood that in our opinion the bounty money -is no part of the crop or the proceeds of the crop. The question was, in this case, who was the owner and producer of the crop, after the death of the testator. We adhere to the case of Delogny vs. Her Creditors, 48 An. 488. In that case, as in the case before us, the owner was the producer of the crop, but she, Mrs. Delogny, in pledging the crop, had not pledged the bounty granted by the government.
Having settled upon this, as our view of the point, we must determine the relative value of the interest of each producer.
We deem it in place to state that in ascertaining these values, we calculated upon the basis of round numbers in support of a general conclusion and not upon the basis of figures given to establish an absolute accurate balance; we think none the less our basis is correct enough to sustain our judgment in the matter.
It is well known everywhere in Louisiana, at any rate, that the labor and expense of cultivating a cane crop are about at an end on the 19th of September. The cane has been cultivated and laid by; the crop is left to the fertility of the soil, the fall of the sunbeams, and to the soft architectural hands of the showers.
As an estimate, we believe, that on the well employed plantation, such as we think this was, the cost of cultivation is about equal to the cost of manufacture, and that upon that basis the heirs at law are entitled to one-half of the bounty and the legatee, Mrs. Allen, to the other half.
We have adopted this basis because we think it is fair and just to all the interested parties, and also because it concerns the State and heirs and legatees, that there be an end to lawsuits.
*1115 If we were to remand the ease to ascertain with great precision the value of the crop prior to the 19th of September, and the value of the crop after the 19th of September,' corresponding with the interest of each producer, we do not think the result would be more satisfactory and just; besides any difference which might be found would be more than counterbalanced by the unavoidable delay and. expense consequent upon the remanding.
It is therefore ordered and adjudged that the bounty money in controversy be divided equally and that one-half this money be distributed among the heirs as an unwilled portion, and that the other half be delivered to Mrs. Allen, legatee.
With this amendment the judgment appealed from is affirmed at appellees’ costs.
Miller, J.
My view is the bounty money goes to Mrs. Allen and those heirs who with her inherit the Rienzi plantation.